THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KIM D. KIMBRELL, Defendant-Appellant.

Fourth District No. 4—96—0604

Opinion filed August 29, 1997.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Richard J. Ringhausen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In May 1996, a jury convicted defendant, Kim Kimbrell, of one count of theft of property over $300 (720 ILCS 5/16—1(a)(4)(A) (West Supp. 1995)). In June 1996, the trial court sentenced her to 30 months' probation, subject to various conditions, including that she not have any contact with Chris Johnson, the person who allegedly provided her with the stolen property (and who is the father of her son). Defendant appeals, arguing only that the trial court abused its discretion by imposing the "no contact" probation condition. We affirm.

## I. BACKGROUND

We review the trial evidence only to the extent necessary to put defendant's argument in context. Michelle Crawford testified that she lived with Johnson in the downstairs apartment at 1625 Ohio in Quincy, Illinois, while defendant and her 13-year-old son lived in the upstairs apartment. In September 1995, two homes near Quincy were burglarized and jewelry and other items (including a grandfather clock) were stolen. On September 15, 1995, Johnson gave Randy Wert "some money *** and some meth[amphetamine]" for the stolen jewelry. Crawford stated that Johnson "had [defendant] take the jewelry," who then put it in a plastic baggie inside her purse and took it from the downstairs apartment. Crawford also testified that Nick Salyer, who burglarized the homes with Wert, brought stolen items (including the grandfather clock) to 1625 Ohio. Based on information provided by Crawford, police officers executed a search warrant at 1625 Ohio and found the stolen jewelry in the upstairs apartment inside defendant's purse.

Defendant testified that she found the jewelry in the upstairs apartment (inside the grandfather clock). She took the jewelry because she wanted to "trade" it for items she believed Salyer had

previously stolen from her. Defendant also stated that Salyer often brought property to 1625 Ohio.

At the June 1996 sentencing hearing, the trial court sentenced defendant to 30 months' probation subject to various conditions (including the "no contact" provision at issue here) and stated, in relevant part, the following:

"As far as you knowing what went on out there at 1625 Ohio, you certainly I think had every knowledge. *** And, essentially, you're raising your son in a den of thieves and a place where cannabis and controlled substances are trafficked. *** [T]hat's the point I can't grasp why anybody would put their son in that kind of situation. When the boy gets about 20 years old and is doing drugs and out of hand, if he is, then you have nobody to blame because he knows what he sees around him."

The presentence report prepared by the probation department indicated that (in addition to stolen property) police found cannabis and a large sum of money at 1625 Ohio during their execution of the search warrant.

## II. THE "NO CONTACT" PROBATION CONDITION

Defendant argues that the "no contact" probation condition constituted an abuse of discretion because it was unreasonable and constitutionally overbroad. We disagree.

●1 Section 5—6—3(b) of the Unified Code of Corrections (Code) enumerates 16 permitted probation conditions which the trial court may impose "in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the [c]ourt." 730 ILCS 5/5—6—3(b) (West Supp. 1995). In particular, section 5—6—3(b)(15) of the Code provides that the trial court may require that the defendant

"refrain from having *any contact*, directly or indirectly, with *certain specified persons* or particular types of persons, including but not limited to members of street gangs and drug users or dealers." (Emphasis added.) 730 ILCS 5/5—6—3(b)(15) (West Supp. 1995).

The trial court is afforded a great deal of discretion in choosing the conditions of probation to be imposed on a particular defendant. *People v. Meyer*, 176 Ill. 2d 372, 378, 680 N.E.2d 315, 318 (1997). Further, in *People v. Ferrell*, 277 Ill. App. 3d 74, 79, 659 N.E.2d 992, 996 (1995) (cited approvingly by the supreme court in *Meyer* (176 Ill. 2d at 378, 680 N.E.2d at 318)), this court held that the following standard of review applies to a trial court's determination regarding probation conditions:

"[A] probation condition (whether explicitly statutory or not) is reasonable if (1) the trial court believes the condition would be a good idea, and (2) the record contains no indication that the court's imposition of the condition is clearly unreasonable."

■ In this case, the trial court's comments during the sentencing hearing unquestionably show that it believed it would be a good idea for defendant to stay away from Johnson. In addition to the remarks already quoted, the court also stated that "[defendant] runs a risk [by having any contact with Johnson]. If [Johnson] leads her down the primrose path, she's the one going to jail."

The record here contains *no* indication that the trial court's imposition of the "no contact" probation condition is clearly unreasonable. Instead, the record shows that (1) Johnson was in the business of receiving and buying stolen property; and (2) whether Johnson gave defendant the jewelry directly or she took it out of the stolen clock, defendant's association with Johnson negatively influenced her behavior.

Thus, judged in accordance with the appropriate standard of review, we hold that the trial court did not abuse its discretion by imposing the "no contact" probation condition in this case.

■ In so holding, we reject defendant's contention that the "no contact" probation condition "ignores the reality" that defendant will "need to have contact with" Johnson when he and their son visit. Defendant and Johnson need *not* have contact to accomplish visitation between Johnson and their 13-year-old son. That it may be an inconvenience or a problem for defendant to arrange for a third party to assist with such visitation is of no moment. As long as a probation condition is otherwise appropriate, the fact that it inconveniences or adversely affects the defendant is of no importance. Indeed, given the legitimate *punitive* component of some probation conditions, such as serving a term of periodic or straight imprisonment, paying a fine, paying restitution, performing public service work, or serving a term of home confinement—among other possible punitive conditions—the inconvenience of a particular probation condition to a particular defendant may make it legitimately *more* attractive to the court to impose, not less so. 730 ILCS 5/5—6—3(b)(1), (b)(2), (b)(8), (b)(9), (b)(10), (e) (West Supp. 1995).

In addition, we note that it is important that the public understand the purpose of probation and support it as a legitimate sentencing alternative. In *Meyer*, the supreme court recently addressed the purpose of probation and wrote the following:

"[T]his court has recognized repeatedly that the purpose of probation is to benefit society by restoring a defendant to useful

citizenship, rather than allowing a defendant to become a burden as an habitual offender. [Citations.] Probation simultaneously serves as a form of punishment and as a method for rehabilitating an offender. [Citation.] Protection of the public from the type of conduct that led to a defendant's conviction is one of the goals of probation." *Meyer*, 176 Ill. 2d at 379, 680 N.E.2d at 318.

One way to develop such public understanding and support is for trial courts to take this sentencing alternative seriously and not shirk from punishing defendants with reasonable probation conditions when appropriate. Courts should not be dissuaded from doing so because of a defendant's claim that such conditions would interfere with his employment. Because no one works 24 hours a day, 7 days a week, some time is *always* available for the court to require the defendant to do something he frankly would rather not do. The court's unapologetic attitude toward an employed defendant when sentencing him to probation should be, "I don't want to interfere with your job, I just want to interfere with your life." Perhaps if the sentenced defendant finds his probation conditions onerous and unpleasant, he—and other felon "wannabes"—might think twice before committing his next felony, thus giving real impact to the deterrent effect of probation and earning the approval and support of the public.

In this regard, we commend the trial court here for not sentencing defendant to probation without any conditions, an action that occurs with disturbing frequency. Too often, defendants simply "get paper"—that is, probation without conditions that pinch. In this case, the court specifically noted that it had considered the evidence, the presentence report prepared by the probation department, arguments of counsel, and defendant's statement prior to imposing the following probation conditions on defendant: (1) periodic imprisonment for 30 days, (2) undergo alcohol and substance abuse evaluations, (3) seek and maintain gainful employment, and (4) refrain from having any contact with Johnson and three other individuals allegedly involved in the burglaries or receiving stolen property. The court's consideration of the particular circumstances of this case and its imposition of these additional probation conditions assured that defendant did not merely "get paper" and made her probation both more rehabilitative and more punitive.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT and GREEN, JJ., concur.