*In re* H.G., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. HUGO G., Respondent-Appellant).

First District (5th Division)   No. 1—99—3722

Opinion filed May 11, 2001.

Rita A. Fry, Public Defender, of Chicago (Eileen T. Pahl, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Latisha Foster, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Respondent, Hugo G., a minor, was adjudicated a delinquent for committing armed robbery and two counts of battery. He was sentenced to 4 years' probation, 60 days in the juvenile detention center and 100 hours of community service. The court also imposed the following conditions of probation pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/5—715 (West Supp. 1999)): (1) TASC and Interventions counseling; (2) no loitering between 27th Street and Kedvale and 28th Street and Kedvale; (3) no association with gang members; and (4) a 7 p.m. curfew.

On appeal, respondent contends that: (1) the petition for adjudication of wardship was defective where it failed to contain an allegation regarding where the offense occurred; (2) the evidence at trial failed to prove beyond a reasonable doubt that the offense occurred in the State of Illinois; (3) the State failed to prove beyond a reasonable doubt that respondent was adjudicated delinquent for committing armed robbery and battery under an accountability theory; and (4) the trial court abused its discretion by imposing certain restrictive conditions of probation. For the reasons that follow, we affirm.

The following facts were adduced at respondent's adjudication hearing. On June 14, 1999, at approximately 3 p.m., Juan Gonzalez was with his family eating at a restaurant on 26th Street. Gonzalez could not recall the name or exact address of the restaurant. Gonzalez was never asked in what city or town the restaurant was located. While eating, Gonzalez noticed two men staring at him. Gonzalez testified that he thought they were staring at the chain around his neck. Once Gonzalez and his family finished their meal and left the restaurant, they entered their vehicle. While he was inside the car, Gonzalez saw a group of four to six people walking toward the vehicle. Gonzalez identified respondent as one of the individuals he saw at that time. Gonzalez testified that he saw one of the individuals flash a gang sign. One of the individuals, whom Gonzalez could not identify, threw a beer bottle at the car window. After the bottle was thrown, the men approached Gonzalez and his family. Gonzalez testified that when he got out of the car to protect his family from harm, the individuals began to hit him with bottles and sticks. Gonzalez specifically recalled that respondent hit him with a stick. Upon seeing her husband being attacked, Gonzalez's wife, Nolenoila Baldonis, attempted to help him, but she was hit also. The attack lasted approximately three or four minutes. Gonzalez testified that during the attack, his gold chain, bracelet and watch were stolen. Gonzalez was unable to identify who took the items from him. When the police arrived, the individuals fled, but respondent, who was 14 at the time, and another individual, were apprehended at the scene.

On cross-examination, Gonzalez testified that respondent hit him with a bottle rather than a stick. Gonzalez further testified that he told the police that an individual named Roger threw a bottle at him. Gonzalez testified that everything happened very fast and that there was a lot of excitement. Gonzalez then testified that he saw respondent throw a bottle but did not know whether he hit him with it.

Gonzalez's wife, Nolenoila Baldonis, testified that she was with her husband and children at a restaurant on 26th Street. Baldonis, like Gonzalez, could not recall the name or exact address of the

restaurant and did not testify as to the town or city. After eating, they entered the car to leave. Baldonis testified that before she closed the car door, she heard glass fall. She got down and then realized that someone had thrown a bottle at the back of the car. Baldonis did not see who threw the bottle. Baldonis testified that when Gonzalez got out of the car, he was attacked by four to six individuals. Baldonis identified respondent as one of the individuals present at the scene and testified as follows:

"A. The guys attacked him to hit him.

Q. Okay; when you say 'the guys,' about how many of them were there?

A. There were like (6) or (4), (5) or (6). I'm not sure.

\* \* \*

Q. What was the minor doing at that time?

A. I didn't see him do anything.

Q. Okay.

A. I didn't notice since there were several.

Q. Was he one of these people, though?

\* \* \*

A. Yes; he was one of them.

Q. And, what exactly were they doing to your husband?

A. They were hitting him with large tubes."

When Baldonis got out the car in an attempt to defend her husband, she was also attacked. Baldonis testified that the attackers stole her wallet, which contained $500.

On cross-examination, Baldonis testified that Gonzalez was not hit with a baseball bat, but with something similar to a police officer's nightstick. Baldonis further testified that everything happened so fast that she did not recognize any of the faces of the individuals involved in the attack.

Following the close of evidence, the court adjudicated respondent delinquent for committing two counts of armed robbery and two counts of battery. In so finding, the court ruled that respondent was identified by both witnesses as one of the individuals involved in the attack. The court also found the testimony of Gonzalez and Baldonis to be credible.

At the sentencing hearing, respondent's probation officer recommended that respondent return to custody for TASC and Interventions counseling. The probation officer made this recommendation because he was informed by respondent's mother that respondent's friends were often at her house allegedly drinking and smoking marijuana with respondent. The probation officer also visited respondent's home during school hours and found him with other minors who were alleged gang members.

Defense counsel argued that counselors from the YMCA also had been to the home and did not witness any drinking or smoking and that they had been trying to get respondent enrolled in school.

Following respondent's referral to TASC and Interventions counseling, respondent returned to court for sentencing. During the sentencing hearing, respondent's counsel made a motion for a new trial or, in the alternative, a motion for reconsideration and argued that the testimony of Gonzalez and Baldonis was inconsistent. Defense counsel also argued that because Baldonis testified that she did not see respondent do anything, the evidence was insufficient to find respondent guilty. The trial court denied the motion.

Respondent's probation officer testified that respondent's mother requested a curfew for her son. The probation officer further recommended that respondent be barred from loitering on the corners of 27th Street and Kedvale or 28th Street and Kedvale because these areas are known hangouts for the Two Six Gang. The trial court then imposed the following conditions of probation:

"You have to go to school everyday. You have to follow your mother's rules at home, cooperate with the TASC drug program, attend any counseling that's recommended, not be involved in gangs or hang around with people who are in gangs, stay off the corner of 27th and Kedvale, and, also, 28th and Kedvale.

Even though you live two blocks away, find some other way to get around. If you do these things, at the end of five years and, perhaps sooner, your case will be closed."

The order containing the specifications of the sentence of probation phrased the geographical limitation as prohibiting "loitering" on the corners of 27th and 28th and Kedvale.

The court also imposed a 7 p.m. curfew which would remain in effect until the probation officer indicated it was no longer necessary. The trial court scheduled a progress report for November 17, 1999, which was not made a part of the record on appeal. Respondent's timely appeal followed.

Respondent first contends that the petition for adjudication of wardship is fundamentally defective because it fails to contain an allegation of where the offense occurred. The State responds that respondent is actually making an argument as to venue. As respondent failed to address venue prior to the appeal, the State asserts that he has waived his opportunity to be heard on the issue. Notwithstanding waiver, the State argues that the petition for adjudication satisfied the statutory requirements.

■ Respondent bases his contention upon section 111—3 of the Code of Criminal Procedure of 1963 (Code), which requires that a

charging instrument must set forth, *inter alia*, "the date and county of the offense as definitely as can be done." 725 ILCS 5/111—3(a)(4) (West 1996). Although respondent concedes that our supreme court, in *In re S.R.H.*, 96 Ill. 2d 138, 143, 449 N.E.2d 129 (1983), held that section 111—3 of the Code does not apply to juvenile proceedings, he nevertheless asserts that the continued validity of this holding is questionable in light of section 5—101(3) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5—101(3) (West 1998)). Section 5—101(3) of the Act states as follows:

> "In all procedures under this Article, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." 705 ILCS 405/5—101(3) (West 1998).

The State, on the other hand, asserts that respondent's contention concerns a question of venue rather than the sufficiency of the petition. The State claims that because any objection to venue is considered waived unless made prior to trial and respondent failed to file any pretrial motions alleging improper venue, he has waived the issue on appeal. The State further argues that, notwithstanding waiver, it is no longer required to prove that the alleged offense occurred in any particular county in Illinois (720 ILCS 5/1—6(a) (West 1996); *People v. Gallegos*, 293 Ill. App. 3d 873, 878, 689 N.E.2d 223 (1997)); therefore, the allegations in the petition were sufficient.

■ We reject both parties' arguments. Both parties have overlooked section 5—520, which sets forth the pleading requirements for a petition brought under the Act. Section 5—520 of the Act has very different pleading requirements than section 111—3 of the Code. Section 5—520 requires the petition to:

> "[A]llege that the minor is delinquent and set forth (a) facts sufficient to bring the minor under Section 5—120; (b) the name, age and residence of the minor; (c) the names and residences of his parents; (d) the name and residence of his or her guardian or legal custodian or the person or persons having custody or control of the minor, or of the nearest known relative if no parent, guardian or legal custodian can be found; and (e) if the minor upon whose behalf the petition is brought is detained or sheltered in custody, the date on which detention or shelter care was ordered by the court or the date set for a detention or shelter care hearing. If any of the facts required by this subsection *** are not known by the petitioner, the petition shall so state." 705 ILCS 405/5—520 (West 1998).

■ Nothing in section 5—520 requires the State to allege the location of the offense in the petition. While respondent urges us to apply the requirements of section 111—3 of the Code to delinquency proceed-

ings, in light of section 5—101(3) of the Act, we reject respondent's position. Although section 5—101(3) became effective on January 1, 1999, this particular statutory language was a part of the Act and its predecessor well before 1999. See Ill. Rev. Stat. 1975, ch. 37, par. 701—2(3)(a); Ill. Rev. Stat. 1979, ch. 37, par. 701—2(3)(a); Ill. Rev. Stat. 1991, ch. 37, par. 801—2(3)(a); 705 ILCS 405/1—2(3)(a) (West 1996). Indeed, this particular language was a part of the statute when our supreme court made its decision in *In re S.R.H.* As such, we reaffirm the holding in *In re S.R.H.* that section 111—3 does not apply to juvenile proceedings. *In re S.R.H.*, 96 Ill. 2d at 143.

█ █ We next address the State's argument that respondent has waived the issue for review because he failed to file a pretrial motion alleging lack of venue. We note that the State relies on section 1—6(a), the venue statute in the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/1—6(a) (West 1998)). However, the State has apparently overlooked section 5—135 of the Act, which governs venue as it applies to juveniles. Section 5—135 states in pertinent part:

> "(1) Venue under this Article lies in the county where the minor resides, where the alleged violation or attempted violation of federal or State law or county or municipal ordinance occurred or in the county where the order of the court, alleged to have been violated by the minor, was made unless subsequent to the order the proceedings have been transferred to another county." 705 ILCS 405/5—135 (West Supp. 1999).

Notwithstanding the State's oversight, we reject the State's contention that the issue is one of venue. Respondent specifically argued that the petition failed to contain an allegation regarding the place of the offense and explicitly referred to the error as a "pleading defect." We will review the issue as alleging a defect in the pleadings. As respondent correctly points out, "[w]hen attacked for the first time on appeal a complaint is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. Pujoue*, 61 Ill. 2d 335, 339, 335 N.E.2d 437 (1975). This holding was extended to juvenile proceedings in *In re S.R.H*, 96 Ill. 2d 138, 145, 449 N.E.2d 129 (1983).

█ An examination of the petition under this standard establishes that it provided respondent with adequate notice of the offenses charged and that the allegations were sufficiently specific to preclude, on double jeopardy grounds, any future prosecution based on the same conduct.

Respondent next contends that the State did not prove jurisdiction in Illinois beyond a reasonable doubt where, at trial, the scene of the

crime was identified only as outside of an unnamed restaurant on 26th Street, with no city or state being named. The State responds that jurisdiction was proven where the petition was filed in Cook County and it alleged violations of statutes pursuant to the Illinois Criminal Code. After oral argument, we granted the State's motion for leave to cite additional authority in further support of its argument. The State relies on *State v. Butler*, 353 Md. 67, 724 A.2d 657 (1999), to support its assertion that only when the evidence presented raised a genuine dispute does jurisdiction become an element the State must prove beyond a reasonable doubt. *Butler*, 353 Md. at 79, 724 A.2d at 663. The State asserts that, here, jurisdiction was never an issue; there was no question raised as to whether respondent committed the offense in Illinois. In our view, an examination of whether sufficient facts were presented to raise an issue of jurisdiction is unnecessary because respondent's conduct is clearly governed by the Juvenile Court Act rather than the Criminal Code.

■ Section 5—120 governs the "Exclusive Jurisdiction" of juveniles under the Act and states in pertinent part:

"Exclusive jurisdiction. Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate, *regardless of where the act occurred*, any federal or State law or municipal or county ordinance." (Emphasis added.) 705 ILCS 405/5—120 (West 1998).

Our research has revealed no case law that has addressed this new provision of the Act. This provision was formerly a part of the definitional section of the Act under the term "delinquent," which was defined as "any minor who prior to his or her 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law, county or municipal ordinance." 705 ILCS 405/5—105(3) (West 1998). Although the Act is now restructured, this section continues to set forth the "jurisdictional facts" necessary for the institution of delinquency proceedings under the Act. *In re Greene*, 76 Ill. 2d 204, 213, 390 N.E.2d 884 (1979).

We must draw a clear distinction between the jurisdictional requirements of section 5—120 of the Act and section 1—5 of the Criminal Code. Section 1—5 provides in pertinent part:

"(a) A person is subject to prosecution in this State for an offense *** if:

(1) The offense is committed either wholly or partly within the State[.]" 720 ILCS 5/1—5 (West 1998).

A review of section 5—120 establishes that the legislature, by inserting the language, "*regardless of where the act occurred*," has

specifically excluded a requirement to prove the location of the offense. Thus, the State was not required to provide evidence of the location of the offense in order to establish jurisdiction Although respondent cites several cases in which there was insufficient evidence to prove beyond a reasonable doubt that a crime occurred within the State of Illinois, we note that each of these cases was governed by the Criminal Code, not the Juvenile Court Act. *People v. Strook*, 347 Ill. 460, 179 N.E. 821 (1932) (proof that defendant lived "upon the North Side" or that the burglary occurred on "Chicago Avenue" could not prove beyond a reasonable doubt that the offense was committed in either Cook County or the State of Illinois); *People v. Allen*, 413 Ill. 69, 107 N.E.2d 826 (1952) (street name and number insufficient to prove location in the absence of evidence of the city itself); *People v. Blanck*, 263 Ill. App. 3d 224, 635 N.E.2d 1356 (1994) (insufficient circumstantial and direct evidence to prove that offense occurred wholly or partly in Illinois).

■ The dispositive issue is whether respondent submitted to the jurisdiction of the court. Where a juvenile appears before the court and participates in juvenile proceedings, he voluntarily submits to the jurisdiction of the court. *In re T.O.*, 187 Ill. App. 3d 970, 973-74, 543 N.E.2d 969 (1989). Here, respondent appeared in response to the juvenile petition alleging delinquent acts and was represented by counsel. In fact, respondent's counsel filed a motion to suppress statements and clearly stated that the offense occurred "in the vicinity of 3815 W. 26th St, Chicago, IL." We also note that there is nothing in the record to indicate that respondent or his parents lacked actual notice of the charges against him prior to trial. Moreover, at the time of the proceedings, respondent made no objection to the court's jurisdiction and the record shows that he participated fully in these proceedings. Therefore, on these grounds, we hold that he has waived any challenge to the court's jurisdiction. *In re W.D.*, 194 Ill. App. 3d 686, 691, 551 N.E.2d 357 (1990).

■ Respondent further contends that the evidence at trial did not show beyond a reasonable doubt that he was adjudicated delinquent under an accountability theory for armed robbery or battery. In order to convict a defendant on a theory of accountability, the State must establish the following beyond a reasonable doubt: (1) that the defendant solicited, ordered, abetted, agreed, or attempted to aid another in the planning or commission of the crime; (2) that the defendant's participation took place before or during the commission of the crime; and (3) that the defendant had the concurrent intent to promote or facilitate the commission of the crime. *People v. Carrizales*, 240 Ill. App. 3d 893, 608 N.E.2d 30 (1992).

Respondent argues that there was no evidence of an agreement or that he had a prior relationship with the alleged attackers or that he planned and participated in the commission of the armed robbery or battery.

An examination of the evidence in the case at bar establishes that there is sufficient proof of respondent's accountability for the crime. Gonzalez and Baldonis both made in-court identifications of respondent and testified that he was present at the time the attack occurred. Although respondent argues that Baldonis testified that she did not see respondent do anything, a defendant may be found to have aided and abetted without actively participating in the overt act itself. *People v. Stanciel*, 153 Ill. 2d 218, 237, 606 N.E.2d 1201 (1992). Respondent was close enough to the scene of the crime and there is no evidence to indicate that he attempted to stop the attack or seek help for the victims.

Respondent further argues that Gonzalez's testimony was not credible where he testified at trial that respondent hit him with a stick, but then on cross-examination testified that respondent threw a bottle. Gonzalez also testified that he told the police that a person named Roger threw a bottle at him and that he was unsure whether he was actually hit by the bottle thrown by respondent. Respondent asserts that these inconsistencies in Gonzalez's testimony cannot sustain a conviction. We find respondent's argument unpersuasive. Although Gonzalez testified that he told the police that another individual threw a bottle, he consistently stated that respondent was involved in the attack. It is the responsibility of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence. *People v. Steidl*, 142 Ill. 2d 204, 226, 568 N.E.2d 837 (1991). Here, the trial court observed both witnesses during their testimony and found them to be credible. The court further addressed the inconsistencies in Gonzalez's testimony and found they did not detract from his testimony, finding that it would be difficult for the victims to plainly identify which attacker did what during the altercation.

Respondent also argues that the State failed to prove that respondent intended to commit armed robbery or battery. To demonstrate a defendant's intent to promote or facilitate a crime, the State must show either that the defendant shared the criminal intent of the principal or that there was a common criminal design. *In re W.C.*, 167 Ill. 2d 307, 337, 657 N.E.2d 908 (1995). Intent may be inferred from the nature of the defendant's actions as well as the circumstances surrounding the commission of the offense. *People v. Perez*, 189 Ill. 2d 254, 266, 725 N.E.2d 1258 (2000). This is a question of fact. The trial

court's findings in this case are not against the manifest weight of the evidence. The evidence in this case clearly shows that the entire group acted as they did to achieve the armed robbery of the victims and that this was accomplished by the group as a whole.

█ Finally, respondent contends that the trial court abused its discretion in imposing certain conditions of probation. The State responds that respondent has waived this issue on appeal because he failed to file a motion to reconsider or reduce his sentence. In general, the failure to object or file a motion to reconsider or reduce sentence operates as a waiver of the issue. However, the written posttrial motion requirement is inapplicable to delinquency appeals. *In re W.C.*, 167 Ill. 2d 307, 318-27, 657 N.E.2d 908 (1995). Therefore, we will address the merits of respondent's arguments.

Respondent argues the trial court erred in prohibiting respondent from loitering at 27th and 28th Streets and Kedvale, associating with gang members and imposing a 7 p.m. curfew where there was no testimony that any gang members were involved in the incident or that the incident occurred at 27th and 28th Streets. Respondent argues that the conditions banning loitering at that location, banning association with gang members and establishing a 7 p.m. curfew are overly broad and infringe upon his constitutional rights.

█ The trial court is given a great deal of discretion in choosing the conditions of probation to be imposed upon a particular defendant. *People v. Kimbrell*, 291 Ill. App. 3d 605, 607, 684 N.E.2d 443 (1997). In assessing the appropriate disposition for a minor, the trial court has the discretion to choose among the various alternatives provided for in the Act; however, delinquency proceedings should be considered protective rather than punitive in nature. *In re J.C.*, 260 Ill. App. 3d 872, 884, 632 N.E.2d 127 (1994). Section 5—715 of the Act sets forth separate conditions that the trial court may impose as conditions of juvenile probation and states the following, in relevant part:

"(2) The court may as a condition of probation or of conditional discharge require that the minor:

\* \* \*

(r) refrain from entering into a designated geographic area except upon terms as the court finds appropriate. The terms may include consideration of the purpose of the entry, the time of day, other persons accompanying the minor, and advance approval by a probation officer, if the minor has been placed on probation, or advance approval by the court, if the minor has been placed on conditional discharge;

(s) refrain from having any contact, directly or indirectly, with certain specified persons or particular types of persons, includ-

ing but not limited to members of street gangs and drug users or dealers;

\* \* \*

(u) comply with other conditions as may be ordered by the court." 705 ILCS 405/5—715 (West Supp. 1999).

"[A] probation condition (whether explicitly statutory or not) is reasonable if the trial court believes the condition would be a good idea and the record contains no indication that the court's imposition of the condition is clearly unreasonable." *In re M.P.*, 297 Ill. App. 3d 972, 976 (1998), citing *People v. Ferrell*, 277 Ill. App. 3d 74, 79 (1995).

In support of his assertions that the conditions of his probation had no connection to the offenses or to the advancement of his rehabilitation, respondent relies on *In re J.G.*, 295 Ill. App. 3d 840, 692 N.E.2d 1226 (1998). In *J.G.*, the trial court modified its order regarding a juvenile's conditions of probation to include banishment from the Village of Skokie, almost nine months after he was found delinquent. The respondent contended on appeal that banishing him from Skokie was an improper condition of his probation because it was not related to his criminal acts or to the victims. After reviewing the statutes, cases and purposes of the juvenile probation act, this court held that banishing the respondent from Skokie had nothing to do with his delinquent acts or rehabilitation and reversed the trial court. *J.G.*, 295 Ill. App. 3d at 843-44. The record established that the respondent was barred from entering Skokie because his girlfriend lived there and her parents wanted to keep him away from their daughter. None of the victims of the crime resided in Skokie nor did respondent commit any delinquent acts there. Consequently, this court held that the condition was unreasonable and an abuse of discretion. *J.G.*, 295 Ill. App. 3d at 844. We find *J.G.* distinguishable from the instant case.

Here, the record contains no indication that the trial court's imposition of conditions of probation was clearly unreasonable. The record demonstrated that the trial court took into consideration the testimony of respondent's probation officer, who witnessed respondent associating with known gang members at a time when he should have been in school. While respondent argues that there was no evidence that the individuals involved in the attack were gang members, we disagree. Gonzalez testified that one of the attackers flashed a gang sign. We also note that the armed robbery took place between four and five blocks from the street corners on which defendant was ordered to avoid loitering.

Respondent also urges us to find that (1) prohibiting him from loitering on the corners of 27th and 28th and Kedvale, (2) prohibiting

him from associating with gang members, and (3) imposing a 7 p.m. curfew infringe upon his rights of association, assembly, expression and the personal liberties protected by substantive due process. Our supreme court recently held that a city "gang loitering" ordinance was violative of substantive due process because persons suspected of being involved in street gangs under the terms of the ordinance were deprived of their right to freely walk the streets and associate with friends. *City of Chicago v. Morales*, 177 Ill. 2d 440, 687 N.E.2d 53 (1997), *aff'd*, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). We find respondent's reliance on *Morales* and similar cases to be misguided. Here, the value to the public of the imposition of these conditions of probation far outweighs any impairment of respondent's constitutional rights. See *In re M.P.*, 297 Ill. App. 3d at 977. We hold that respondent's commission of armed robbery and battery dictates that restrictions be placed upon his liberty for the safety of the public and for the advancement of the rehabilitation of respondent, who was 14 at the time the offenses occurred. We also note that the court took into consideration respondent's recent consumption of alcohol and marijuana and that his mother specifically requested a curfew. Thus, adjudged in accordance with the appropriate standard of review and the specific statutory authorization of section 5—715 of the Act (705 ILCS 405/5—715 (West Supp. 1999)), we hold that the trial court did not abuse its discretion by imposing these conditions of probation in this case.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS and REID, JJ., concur.