# Illinois Official Reports

## Appellate Court

---

### *In re J'Lavon T.*, 2018 IL App (1st) 180228

---

| | |
|---|---|
| Appellate Court Caption | *In re* J'LAVON T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J'Lavon T., Respondent-Appellant). |
| District & No. | First District, Sixth Division<br>Docket No. 1-18-0228 |
| Filed | June 15, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-JD-363; the Hon. Lana Charisse Johnson, Judge, presiding. |
| Judgment | Affirmed in part; vacated in part; and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Alexander G. Muntges, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Connors and Delort concurred in the judgment and opinion. |

¶ 1    The respondent, J'Lavon T., appeals from the trial court's judgment adjudicating him a delinquent minor by reason of his commission of one count of armed robbery and the resulting sentence of 2 years' probation and 40 hours' community service.[1] The respondent argues that certain conditions of probation imposed by the trial court, including that he have "no gang contact" and not post "anything related to a gang" on social media, were improper because they lack exceptions for legitimate purposes. Additionally, he claims that the social media restriction violates due process because it does not adequately identify what conduct constitutes a violation of probation. For the reasons that follow, we affirm in part, vacate in part, and remand.

¶ 2    The State alleged in a petition for adjudication of wardship that the 15-year-old respondent committed one count each of theft from a person (720 ILCS 5/16-1 (West 2016)), robbery (720 ILCS 5/18-1 (West 2016)), aggravated robbery (720 ILCS 5/18-1(b) (West 2016)), armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)), unlawful restraint (720 ILCS 5/10-3(a) (West 2016)), aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2016)), and battery (720 ILCS 5/12-3(a)(2) (West 2016)).

¶ 3    The matter proceeded to a bench trial, where the following evidence was adduced by the State. At approximately 10 a.m. on February 11, 2017, the victim, Jonathon Todd, met an acquaintance at a store in Chicago. The acquaintance led Todd to the basement of an abandoned building, where the respondent and two other individuals "grabbed" him. One of those individuals drew a gun and took Todd's cell phone, and the respondent "punched" Todd in the face. Todd contacted the police, identified the respondent at the police station, and also identified him in court. Based on this evidence, the trial court found the respondent delinquent as to the armed robbery count.[2]

¶ 4    The matter proceeded to a dispositional hearing, where the trial court received a social investigation report. According to the report, the respondent had "been to" the Juvenile Temporary Detention Center once but had not previously been subject to a warrant, arrest, station adjustment, or probation. He attended high school and had "some friends that are in a gang" but denied that he belonged to a gang. The respondent's mother stated that their family lives in "a rough area with a lot crime and gangs" and that he "got caught up" in the offense because of "hanging with the wrong people." She added that, during the offense, the respondent "was a follower and he should have kn[own] better" and that "the biggest problem she [has] with [him] is making sure he does not hang with a negative crowd." She also stated that, during the year following the offense, "things have been about the same but [the respondent] needs to stay away from negative peers."

¶ 5    The trial court sentenced the respondent to 2 years' probation and 40 hours' community service. In setting forth the conditions of his probation, the judge stated:

---

[1]The respondent was tried jointly with a co-respondent, Phazahn D., who is not a party to this appeal.

[2]The judge did not state findings as to the remaining counts.

"No gangs, guns or drugs; drugs includes [*sic*] marijuana and alcohol. Gang[s], you can't post anything on social media related to gangs or any money that might have been attained. I don't [think] this is going to be a problem but I have [to] tell you that.

No illegally attained funds can be shown on Facebook or any social media and anything related to a gang, you can't do that on social media."

The dispositional order form includes a checkmark next to the words "no gang contact or activity" and a handwritten addition stating "no guns, no drugs." The probation order includes handwritten additions stating "no social media," "no gangs, guns, or drugs," and "no gang involvement." The trial court did not ask whether these probation conditions interfered with the respondent's family, school, or employment relationships, although the respondent signed the probation order, which states "[b]y signing, *** you are indicating that you have read and fully understand all of the conditions of your Probation." The respondent neither objected to the probation conditions at the dispositional hearing nor filed a postadjudication motion. This appeal followed.

¶ 6        On appeal, the respondent first contends that the probation conditions imposed by the trial court, including that he have "no gang contact" and not post "anything related to a gang" on social media, constitute overbroad impairments on his right to freedom of speech and association under the first amendment of the United States Constitution (U.S. Const., amend. I). Specifically, he argues that the restrictions lack "commonsense exceptions" for "legitimate purposes," such as contact with family members, classmates, or coworkers who might be gang members, and provide "no guidance" as to what kind of social media usage would violate the no-contact order. Because the respondent lives in an area with gang activity, he also maintains there is an "unreasonable risk" that he could violate the "blanket" restrictions unknowingly and unintentionally.

¶ 7        The State, in response, argues that the respondent forfeited his claim of error by not raising it in the trial court. On the merits, however, the State contends that the respondent's argument regarding his probation conditions amounts to an as-applied constitutional challenge, which fails because the record does not establish that his personal circumstances warrant any exceptions to the trial court's order. According to the State, there is no evidence establishing that anyone in the respondent's family or school belongs to a gang; in the trial court, he identified no legitimate reason for having contact with gang members or posting gang-related content on social media; and nothing in the record suggests that he was "confused" about the scope of the probation order or has been accused of violating his probation by engaging in innocuous conduct. Consequently, the State submits that the respondent's as-applied constitutional challenge relies on "hypothetical examples" and, based on the record, is not justiciable.

¶ 8        The respondent acknowledges that he did not object to the conditions of his probation in the trial court but maintains that this court should review his claim of error under the first or second prong of the plain-error doctrine. The first inquiry before determining whether there was a plain error is to determine whether there was a clear and obvious error. *People v. Eppinger*, 2013 IL 114121, ¶ 19. Absent an error, there can be no plain error and the respondent's forfeiture will be honored. *Id.*

¶ 9        Turning to the merits, we begin by noting that delinquency proceedings are protective in nature and are intended to correct and rehabilitate, not to punish. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 94. To this end, section 5-715(2)(s) of the Juvenile Court Act of 1987 (Act) (705

ILCS 405/5-715(2)(s) (West 2016)) sets forth terms that the court may impose as conditions of juvenile probation, including that a minor "refrain from having any contact, directly or indirectly, with certain specified persons or particular types of persons, including but not limited to members of street gangs." The court may also order probation conditions not enumerated in the Act in order to "achieve the goals of fostering rehabilitation and protecting the public." *In re J.W.*, 204 Ill. 2d 50, 77 (2003); 705 ILCS 405/5-715(2)(u) (West 2016).

¶ 10    Although the trial court has "wide latitude" in imposing probation conditions, its "discretion is limited by constitutional safeguards and must be exercised in a reasonable manner." *J.W.*, 204 Ill. 2d at 77. "To be reasonable, a condition of probation must not be overly broad when viewed in the light of the desired goal or the means to that end." *Id.* at 78. Thus, "[w]here a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (Internal quotation marks omitted.) *Id.* at 78-79.

¶ 11    When assessing the reasonableness of a probation condition, "it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer." *Id.* at 79. Other considerations include (1) whether the probation condition reasonably relates to the rehabilitative purpose of the legislation, (2) whether the public value in imposing the probation condition "manifestly outweighs the impairment to the probationer's constitutional rights," and (3) "whether there are any alternative means that are less subversive to the probationer's constitutional rights, but still comport with the purposes of conferring the benefit of probation." *Id.* Whether a condition of probation violates a probationer's constitutional rights is a question of law, and our review is, therefore, *de novo*. See *People v. Burns*, 209 Ill. 2d 551, 560 (2004) ("The standard of review for determining whether an individual's constitutional rights have been violated is *de novo*.").

¶ 12    In *In re Omar F.*, 2017 IL App (1st) 171073, this court followed the analysis set forth in *J.W.* to examine the constitutionality of probation conditions that restricted a minor's gang contacts and social media usage after he was adjudicated delinquent for committing armed robbery. Specifically, the trial court ordered that the minor "stay away from gangs, guns, and drugs"; "clear" references to those topics from his social media; remove "pictures" of him with gang members from social media; and avoid "gang contact or activity." (Internal quotation marks omitted.) *Id.* ¶¶ 31-32. On review, we found that "attempting to limit the minor respondent's contact (real or virtual) with gang members was a valid condition of probation because it was related to his rehabilitation," particularly where he denied being in a gang but had friends who were gang members. *Id.* ¶ 62. We noted, however, that neither the "no contact" provision nor the social media restriction allowed exceptions "for people based on familial, employment, or educational relationships" or included any "explanation as to what type of contact (physical or online), no matter how innocuous, will result in a probation violation." *Id.* ¶ 63. Consequently, we held that "the probationary conditions as articulated by the trial court were overbroad and not narrowly tailored so as to be unreasonable." *Id.*

¶ 13    The State contends that *Omar F.* is inapposite and relies on a "flawed constitutional analysis" because the minor in that case essentially raised an as-applied constitutional challenge to his gang-related probation conditions and, as here, "no evidence" showed that his family members, classmates, or coworkers belonged to a gang. We disagree and decline to

analyze the respondent's argument regarding his probation conditions under the framework for an as-applied constitutional challenge where our supreme court has explained that the relevant inquiry is whether the conditions are reasonable. See *J.W.*, 204 Ill. 2d at 78 ("when deciding the propriety of a condition of probation imposed in a particular case, whether explicitly statutory or not, the overriding concern is reasonableness"); *People v. Meyer*, 176 Ill. 2d 372, 373, 377-78 (1997) (analyzing the reasonableness of an adult probation condition); *In re J.G.*, 295 Ill. App. 3d 840, 843 (1998) (examining the reasonableness of a juvenile probation condition). The State further argues that *J.W.* is distinguishable because, in that case, the trial court disregarded statutory language that required it to identify appropriate exceptions to a condition of probation that banished a delinquent minor from his hometown. See *J.W.*, 204 Ill. 2d at 81. The supreme court noted, however, that the statutory language at issue "*mirror[ed] the constitutional requirement* that the condition of probation be narrowly drawn." (Emphasis added.) *Id.* That same constitutional requirement for narrow tailoring and reasonableness, as articulated in *J.W.* and applied in *Omar F.*, also applies here.

¶ 14        Turning to the present case, we find, at the outset, that the gang-related restrictions on the minor's contacts and social media usage constitute valid conditions of probation because they relate to his rehabilitation. According to the social investigation report, the respondent lives in an area with gang activity and has friends who are gang members. He denied belonging to a gang, but his mother believed that he participated in the offense because he was "with the wrong people" and stated that, approximately one year after the offense, he still "needs to stay away from negative peers." Given this evidence, along with the trial court's responsibility as a *parens patriae*, we conclude that the court's attempt "to limit [the respondent's] contact (real or virtual) with gang members was a valid condition of probation." *Omar F.*, 2017 IL App (1st) 171073, ¶ 62; see also *In re Presley*, 47 Ill. 2d 50, 56 (1970) (recognizing that "[t]he State, as *parens patriae*, clearly has an interest in safeguarding the lives of delinquent minors, as well as preserving an orderly society").

¶ 15        Having found a valid connection between the respondent's probation conditions and his rehabilitation, we next consider whether those conditions were so overbroad as to be unreasonable. The trial court's order, as noted, prohibited the respondent from "gang contact" and posting "anything related to a gang" on social media. These conditions allow no exceptions for contact or social media postings related to a legitimate purpose, such as communication with family, classmates, or coworkers. And, although the trial court specified that the respondent could not post about money "attained" through gang activity, it offered no guidance as to whether and under what circumstances a social media "posting" could constitute prohibited "contact" for purposes of a probation violation. See, *e.g.*, *Packingham v. North Carolina*, 582 U.S. ___, ___, 137 S. Ct. 1730, 1735 (2017) (recognizing that "[s]ocial media offers relatively unlimited, low-cost capacity for communication of all kinds" (internal quotation marks omitted)). Consequently, we find that the gang-related probation conditions imposed by the trial court in this case, like the probation conditions in *Omar F.*, were overbroad and, therefore, erroneous. 2017 IL App (1st) 171073, ¶ 63.

¶ 16        In reaching this conclusion, we are not unmindful that, in *In re R.H.*, 2017 IL App (1st) 171332, ¶¶ 2-4, a panel of this court held that a probation condition that restricted a delinquent minor from posting about "gangs, guns, or drugs on social media" was not unconstitutional. For several reasons, we decline the State's invitation to follow *R.H.* in this case.

¶ 17    First, *R.H.* analyzed the gang-related probation condition as a content-based restriction on speech, and concluded that it survived strict scrutiny because it was narrowly tailored and advanced a compelling state interest in "preventing [the minor] from further criminal acts." *Id.* ¶¶ 13, 19, 25. This analysis, however, overlooks our supreme court's directive that the "overriding concern" in evaluating a condition of probation is whether it is reasonable. See *J.W.*, 204 Ill. 2d at 78. Second, although the trial court in *R.H.* also prohibited the minor from gang contact, the minor did not challenge the no-contact order on appeal. *In re R.H.*, 2017 IL App (1st) 171332, ¶ 43. Therefore, the *R.H.* panel distinguished *Omar F.*, where the minor challenged both a no-contact order and social media restrictions, and our opinion analyzed the two conditions together. *Id.* ¶ 44. The respondent in this case, as in *Omar F.*, challenges probation conditions restricting both his in-person contacts and his social media usage and, as explained *supra*, both conditions were overbroad. Third, *R.H.* is factually distinct from the case at bar. In *R.H.*, the evidence showed that the respondent "was affiliated" with a gang, "used his social media accounts to taunt rival gang members," and "posted a number of pictures of himself displaying gang signs, posing with guns, and smoking what appears to be cannabis." *Id.* ¶ 18. Here, the respondent lived in a neighborhood where there was a gang presence and had friends who were in a gang, but no evidence established that he belonged to a gang or had posted gang-related material on social media at the time of his dispositional hearing. Consequently, *R.H.* is inapposite and does not change our determination that, in accordance with *J.W.* and *Omar F.*, the probation conditions imposed in this case were overbroad and unreasonable.

¶ 18    Because we find error, we must determine whether the error rose to the level of plain error so as to permit our review. *People v. Fort*, 2017 IL 118966, ¶ 18. The plain-error doctrine is a narrow and limited exception to the general forfeiture rule allowing a reviewing court to consider a forfeited issue that affects substantial rights. *People v. Herron*, 215 Ill. 2d 167, 177-79 (2005). In the sentencing context, we will review an error that is not properly preserved as plain error where (1) the evidence is closely balanced or (2) the error is so fundamental that it may have deprived the respondent of a fair sentencing hearing. *People v. Thomas*, 178 Ill. 2d 215, 251 (1997).

¶ 19    The respondent contends that this court should review his sentencing challenge under either the first or second prong of the plain-error doctrine. As to the first prong, he argues that evidence of his gang involvement was closely balanced because his offense was not gang related, no evidence showed that his social media included gang content, and according to the social investigation report, he denied being in a gang and stated that only "some" of his friends are gang members. Based on the same facts, he maintains that the trial court's imposition of "blanket" probation conditions was "arbitrary" and, therefore, also constituted second-prong plain error.

¶ 20    We elect to review the probation conditions under the second prong of the plain-error doctrine, as the gang-related restrictions imposed by the trial court, while valid, were so vague as to affect the integrity of the respondent's dispositional hearing. Indeed, "[t]he judicial process of permitting social rehabilitation as a condition of probation depends on evidence of the need for such social rehabilitation but also clear parameters in setting out how the rehabilitation is to proceed." *Omar F.*, 2017 IL App (1st) 171073, ¶ 68. As this court has recognized, the prevalence of gangs in certain areas of Chicago renders "a blanket prohibition against contact with gangs *** too general and overbroad to provide a juvenile with clear

parameters about how to comply with the conditions of his probation." *Id.* When, as here, "the parameters are so vague, overbroad, or general that a juvenile could be inadvertently caught violating probation in a number of scenarios, including when conducting himself in a constitutionally protected manner, then the judicial process is not functioning as intended," and "[t]his breakdown in the judicial process constitutes second-prong plain error." *Id.* In this case, although the respondent signed his probation order, the trial court made no inquiry as to whether the probation conditions would unreasonably impinge on his contact and communication with family, classmates, and coworkers. Therefore, based on the same considerations set forth in *Omar F.*, we find that the trial court failed to provide a fair process for determining what gang-related restrictions on contact and social media usage were reasonable. But see *R.H.*, 2017 IL App (1st) 171332, ¶ 38 (finding no second-prong plain error where the respondent was not "deprived of an opportunity to question the probation condition").

¶ 21    In summary, we conclude that the imposition of gang-related probation conditions in this case was valid but overbroad and, therefore, unreasonable so as to constitute plain error. Accordingly, we excuse the respondent's forfeiture of this issue and vacate that part of the trial court's order requiring him to have "no gang contact" and not post "anything related to a gang" on social media. We remand the cause so that the trial court may consider whether such restrictions are still warranted, and, if so, what appropriate exceptions for contacts and social media postings related to family, school, and employment should be applied. The judgment of the trial court is affirmed in all other respects. Based on the foregoing, we need not reach the respondent's additional contention that the social media prohibition violates due process.

¶ 22    Affirmed in part; vacated in part; and remanded.