2020 IL App (1st) 191476-U

THIRD DIVISION
July 29, 2020

No. 1-19-1476

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *In re* C.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 JD 60135 |
| | ) | |
| C.G., | ) | Honorable |
| | ) | Terrence V. Sharkey, |
| Respondent-Appellant). | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County adjudicating the minor delinquent is affirmed in part and reversed in part.  Pursuant to the one-act, one-crime rule we vacate respondent's unlawful possession of firearms (UPF) adjudication and affirm the finding of delinquency on the aggravated unlawful use of a weapon (AUUW) charge.  We also vacate that portion of the trial court's order requiring "no gang contact" and remand the cause so the trial court may revise respondent's probation conditions.

¶ 2    Following a bench trial, respondent, C.G., a minor, was adjudicated delinquent for AUUW and UPF based on one physical act of possessing a single firearm.  Respondent was also adjudicated delinquent for resisting arrest.  The trial court sentenced respondent to three years' probation.  The written probation conditions stated "no gangs" and "no gang contact *or* activity"

(emphasis in original) along with an oral explanation of the conditions to include terms relating to respondent's internet and social media use. Respondent appealed from the judgment of the trial court arguing (1) the one-act, one-crime rule requires reversal of respondent's adjudication for UPF where respondent possessed a single firearm but was adjudicated delinquent for both UPF and AUUW and (2) the trial court's gang related restrictions and terms governing respondent's use of the internet and social media were "unreasonable considering the overly broad and vague nature of the conditions and their impact on [respondent's] constitutional rights." For the reasons set forth below, we vacate the trial court's UPF adjudication and affirm the finding of delinquency on the AUUW charge. Additionally, we vacate that portion of the trial court's order requiring "no gang contact" and remand the cause so that the trial court may revise respondent's probation conditions.

¶ 3                                BACKGROUND

¶ 4     On August 2, 2018, the State filed a Petition for Adjudication of Wardship which was subsequently amended on September 20, 2018 charging respondent, C.G., then 15 years old, with, among other offenses, two counts of AUUW, one count of UPF, and one count of resisting a peace officer.

¶ 5     Evidence at trial included Posen Police Officers Lowisz and Bartels' testimony. On August 1, 2018, the two uniformed officers observed respondent in a gas station at approximately 4:00 a.m. past curfew while conducting a "business check." The officers entered the gas station and Lowisz engaged respondent who stated he was 17 years of age. Respondent began pacing, stating "man, I don't even want these chips no more" and started walking toward the door. Lowisz followed respondent and observed a black shiny metallic object in respondent's right pocket which he believed to be a firearm. Respondent's hands were in his

pocket and Lowisz twice ordered him to remove them to no avail. Lowisz got behind respondent and attempted to grab him, but respondent began to push and fight with the officer. The struggle continued out of the doorway and into the parking lot. At one point, respondent pointed the handgun at Lowisz's chest at which point the officer stepped back from respondent and drew his weapon. Respondent began running and Lowisz gave chase repeatedly ordering respondent to stop and drop the gun. Respondent did not comply. Eventually Lowisz lost sight of respondent. Respondent was ultimately apprehended and the handgun he possessed during the incident was also recovered.

¶ 6    Following a bench trial, respondent was adjudicated delinquent on one count AUUW, once count UPF, and one count of resisting a peace officer. Thereafter, a subsequent dispositional/sentencing hearing was held. In aggravation, the State offered respondent's Juvenile Risk Assessment (JRA), Social Investigation, and Gang Information Report (GIR) which were reviewed by the trial court. As highlighted by the State, the GIR noted that respondent was clearly associated with a gang, had admitted to his gang involvement, and, as recently as June 13, 2019, posted multiple photographs on social media showing respondent with guns, smiling while pointing the guns at the camera in addition to other concerning behavior.

¶ 7    In the Social Investigation, respondent stated that neither he nor his two close friends were in gangs. This; however, was belied by the GIR containing various social media postings wherein respondent expressly identifies at least two gang associations. Respondent indicated that his two close friends have been arrested before, he did not believe they were a positive influence on him, and their activities together involved smoking marijuana.

¶ 8    The JRA indicated that respondent denied having a gun during the August 1, 2018 incident and viewed himself as a victim. The report also identified respondent's several

disciplinary actions at school for poor behavior, tardiness, absences from class, and lack of interest in his schoolwork. Respondent had one prior adjudication of delinquency for attempt robbery in 2018 for which he received three years' probation as well as prior arrests that were diverted and not brought into the juvenile justice system. In mitigation, respondent offered a letter from his principal and a community service letter.

¶ 9 The trial court sentenced respondent to three years' probation with the first year being intensive probation. As part of his probation conditions the trial court ordered "no gangs, guns, or drugs." The court provided further oral explanation stating:

> "No gang activity, guns, or drugs means he cannot participate in any activity that furthers or promotes the function of a street gang. That would include posting anything on the internet, taking pictures with gang members with guns, smoking marijuana, if that's what it is that he's smoking.
>
> He cannot post and must clear from any social media any photos or videos of himself holding or displaying any guns, real or replicas, or any other weapons. He must delete any photos, videos, or messages promoting street gang activity, acts of violence, criminal activity, illegal drugs, or money that was illegally obtained.
>
> This includes the display of any street gang hand signs or insignias. He's not allowed to possess a gun or any illegal or non-prescribed drug. And he must remove any tags from his social media account today."

During the sentencing hearing, respondent indicated that he understood the conditions and terms of his probation.

¶ 10    The written dispositional order, which is a standard form order, contains a check mark next to "no gang contact *or* activity" (emphasis in original). The words "no gangs, guns, or drugs" was written on the probation order just above the listed probation terms and conditions.

¶ 11    This appeal followed.

¶ 12                                    ANALYSIS

¶ 13    Respondent raises two issues on appeal. Respondent first argues – and both parties agree – that the one-act, one-crime rule requires reversal of respondent's adjudication for UPF where he possessed a single firearm as part of a single act but was adjudicated delinquent for both UPF and AUUW. We agree with the parties and vacate respondent's UPF adjudication as addressed more fully below. Respondent next argues the trial court's gang-related probation conditions and internet and social media-related terms were unreasonable "considering the overly broad and vague nature of the conditions and their impact on [respondent's] constitutional rights." For the reasons set forth below we vacate the portion of the trial court's order requiring "no gang contact" and remand the cause to allow the trial court to revise respondent's probation conditions. We first address respondent's argument pursuant to the one-act, one-crime rule.

¶ 14                             One-Act, One-Crime

¶ 15    The parties agree, as do we, that the trial court erred in finding respondent delinquent for UPF and AUUW where both counts arose from the same act. The one-act, one-crime rule applies to juvenile proceedings (*In re Samantha V.*, 234 Ill. 2d 359, 375 (2009)) to prohibit multiple convictions "arising from the same single physical act" as is the case here. *In re Tyreke H.*, 2017 IL App (1st) 170406, ¶ 122.

¶ 16    While respondent did not object at trial as is generally required to preserve an issue for appeal, a violation of the one-act, one-crime rule constitutes second-prong plain-error because it

"affects the integrity of the judicial process" thereby avoiding forfeiture. *Samantha V.*, 234 Ill. 2d at 378-79.

¶ 17    In applying the one-act, one-crime rule, "respondent should be sentenced on the most serious offense and the less serious offense should be vacated." *Id*. at 379.  Both UPF and AUUW are class 4 felonies with the same punishment and thus "this court should vacate and merge the UPF *** conviction[] into the *** AUUW adjudication." *Tyreke H*., 2017 IL App (1st) 170406, ¶ 122.  The parties both agree that respondent's UPF adjudication should be vacated.  For the sake of judicial economy, we vacate respondent's adjudication on the UPF charge and uphold his AUUW finding of delinquency.  See *id*. at ¶¶ 122-25; see also *In re Gabriel W.*, 2017 IL App (1st) 172120, ¶¶ 55-57 (vacating the respondent's UPF finding of delinquency and upholding his AUUW finding of delinquency pursuant to the one-act, one-crime rule).

¶ 18                                    Probation Conditions

¶ 19    We turn now to respondent's second argument challenging the trial court's probation conditions.  Respondent challenges both the trial court's written conditions of probation – barring him from "gangs[,]" and "gang contact" – as well as the trial court's oral terms restricting his use of the internet and social media.

¶ 20    Contrary to the State's assertion, respondent is not raising an "as applied" constitutional challenge to the Juvenile Court Act's permissive statute allowing a trial court to require the minor to refrain from having contact with members of streets gangs as a condition of probation (see 705 ILCS 405/5-715(2)(s) (West 2018)) but instead challenges only the trial court's probation order asking this court to "review the conditions of [respondent's] probation for

reasonableness" citing this court's analysis in *In re Omar F.*, 2017 IL App (1st) 171073, and *In re J'Lavon T.*, 2018 IL App (1st) 180228.

¶ 21    Before we address the merits of respondent's claims, we address the State's argument that respondent's challenge is not properly before this court because he did not avail himself of other avenues to challenge the restrictions before the juvenile court. We disagree and see nothing that prevents us from deciding these issues that are properly before us and over which this court has appellate jurisdiction. As this court previously stated in *In re K.M.*, 2018 IL App (1st) 172349, ¶¶ 69-73, where it reviewed a second-prong plain-error claim as to a minor's probation condition, we are

> "deciding a case over which we unquestionably have jurisdiction, involving serious constitutional challenges that the juvenile did not assert in the trial court." *Id*. ¶ 71.

This court further reasoned:

> "That is precisely why we have the plain-error doctrine – to allow defendants to raise errors on appeal, under certain circumstances, that their trial attorneys missed. *** Juveniles, that is, who are often represented at trial by the Cook County Public Defender (as here), which no longer represent the juvenile upon the filing of the notice of appeal – at that point, a different office, the State Appellate Defender, takes over, to advocate for the juvenile's position *on appeal*. See 725 ILCS 105/10(a) (West 2016).
>
> Sure, it would be great if an unrepresented, indigent juvenile such as the one before us, a 17–year–old special education student, had the wherewithal to assert his rights by returning to the juvenile court – perhaps even asking the

- 7 -

Public Defender to represent him once more – for a modification of his probation condition. But to go the next step and hold that his *failure* to do so is a death blow to his appeal would be nothing short of draconian." (Emphasis in original.) *Id*. at ¶¶ 72-73.

¶ 22   Here, respondent was just 16 years of age at the time of sentencing. Like the defendant in *In re K.M.*, respondent was represented by the Cook County Public Defender at trial and now the State Appellate Defender on appeal. Respondent appears to have a troubled past having another conviction for attempt robbery and having acknowledged gang associations with the Black Disciple and "J Money Gang[.]" Respondent was also high risk in "Domain 2: Family and Living Arrangements," "Domain 3: Peers and Social Support Network," "Domain 4: Education and Employment," and "Domain 5: Pro-Social Skills." As in *In re K.M*, we believe it is unrealistic to expect such a juvenile to proactively assert his rights before the trial court and draconian to require that he do so when his appeal from the trial court's probation conditions is permitted by Illinois Supreme Court Rules. See Ill. S. Ct. R. 604 (eff. July 1, 2017) (stating "[a] defendant who has been *** found guilty and sentenced to probation *** may appeal from the judgment and may seek review *** of the finding of guilt or the conditions of the sentence, or both"); and Ill. S. Ct. R. 660 (eff. Oct. 1, 2001) (providing that "[a]ppeals from final judgments in delinquent minor proceedings, except as otherwise specifically provided [which is not applicable here], shall be governed by the rules applicable in criminal cases"); see also *J'Lavon T.*, 2018 IL App (1st) 180228. Accordingly, we review respondent's arguments on appeal with respect to the trial court's probation conditions.

¶ 23                         Second-Prong Plain-Error

¶ 24    Turning to respondent's arguments concerning the trial court's probation conditions, we first note respondent's concession "that he did not object to the[] terms [of his probation] at sentencing *** which ordinarily would subject his argument to forfeiture" but asks that this forfeiture be excused under second-prong plain-error. Accordingly, before we can address the merits of respondent's claims, we must first consider whether the plain-error doctrine permits our review of this issue.

¶ 25    Second-prong plain-error applies to bypass normal forfeiture principles where "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotations omitted.) *People v. Lewis*, 234 Ill. 2d 32, 43 (2009).

¶ 26    "The burden of persuasion remains with the defendant under both prongs of the plain-error test." *Id.*; see also *People v. Naylor*, 229 Ill. 2d 584, 593 (2019) ("When a defendant fails to establish plain-error, the result is that the 'procedural default must be honored.' "). The first step in a plain-error analysis is to determine whether any error occurred at all. *Lewis*, 234 Ill. 2d at 43; see also *People v. Johnson*, 218 Ill. 2d 125, 139 (2005) (holding "there can be no plain error if there is no error").

¶ 27    As noted above, respondent challenges both the trial court's written conditions of probation – barring him from "gangs[,]" and "gang contact" – as well as the trial court's oral terms restricting respondent's use of the internet and social media. While he concedes "the juvenile court undoubtably had an interest in preventing [respondent's] contact with gang members as a rehabilitative measure[,]" respondent argues the trial court's restriction preventing gang contact and activities "impinges on [his] personal liberties protected by the Due Process Clause, particularly his 'general right to associate with others' " and "his constitutional right

under the First Amendment." He argues that "[t]he trial court's orders requiring [him] to have 'no gang contact' and [terms restricting] posting on social media do not contain any exceptions for innocuous contact, such as that which may occur at work, school, or with family" and are thus "overbroad and vague[.]"

¶ 28    Though respondent combines the gang-related restrictions and social media terms into one argument, we address separately the probation conditions on (a) gangs and (b) the internet and social media terms orally set forth by the trial court.  See *In re K.M.*, 2018 IL App (1st) 172349, ¶ 66.

¶ 29    To start, we think it is worth distinguishing the trial court's written probation conditions from the oral terms provided by the trial court at respondent's disposition/sentencing hearing. See *Pielet v. Pielet*, 2012 IL 112064, ¶ 56 ("a reviewing court may address issues that are likely to recur on remand in order to provide guidance to the lower court and thereby expedite the ultimate termination of the litigation.").  Here, the trial court's terms related to the internet and social media were all made orally and were not set out in the trial court's written probation orders.

¶ 30    We find this distinction of significance where appellate court decisions, in the context of probation revocation, have stated that "conditions of probation should not be orally stated but should be spelled out in the probation order in clear and unmistakable detail" (see *People v. Susberry*, 68 Ill. App. 3d 555, 561 (1979); see also 705 ILCS 405/5-715(4) (West 2018)) and further finding that probation cannot be revoked where "a probation order fails to inform a defendant of the required and prohibited conduct."  *People v. Clark*, 313 Ill. App. 3d 957, 960 (2000).  At the same time, reviewing courts have also acknowledged the impossibility of detailing in a written order every aspect leading to the successful completion of a probation

requirement reasoning that where a condition of probation "is included in a written order, terms

for implementing it may be given orally." *Id.*

¶ 31    We review the constitutionality of a probation condition, a question of law, *de novo*. *In*

*re K.M.*, 2018 IL App (1st) 172349, ¶ 22; *In re J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 11.

¶ 32                          A. No Gangs and No Gang Contact

¶ 33                          Step One – Plain-Error Analysis

¶ 34    We begin our plain-error analysis with a determination as to whether any error occurred

at all. See *Lewis*, 234 Ill. 2d at 43. For the reasons set forth below we find "a clear *** error

occurred and that error is so serious that it affected the fairness of [respondent's] trial and

challenged the integrity of the judicial process, regardless of the closeness of the evidence."

(Internal quotations omitted.) *Id.*

¶ 35    Among constitutionally protected personal liberties is the "general right to associate with

others[.]" *City of Chicago v. Morales*, 177 Ill. 2d. 440, 460 (1997). Here, the conditions of

probation imposed on respondent – barring him from gangs and gang contact implicate his

constitutional rights. See *People v. Morger*, 2019 IL 123643, ¶¶ 18-20, see also *In re K.M.*, 2018

IL App (1st) 172349, ¶¶ 22, 57; and *Interest of J.P.*, 2019 IL App (1st) 181087, ¶ 18; *In re*

*J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 20. "A juvenile's liberty interests are protected by due

process." *In re K.M.*, 2018 IL App (1st) 172349, ¶ 22. "A probation condition that burdens the

exercise of fundamental and constitutional rights (as almost all of them do) must reasonably

relate to the compelling state interest in reformation and rehabilitation." *Id.* citing *In re J.W.*,

204 Ill. 2d 50, 78 (2003); see also *In re J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 9 (stating

"[d]elinquency proceedings are protective in nature and are intended to correct and rehabilitate,

not to punish.").

¶ 36    "[T]o achieve the goals of fostering rehabilitation and protecting the public, a juvenile court has broad discretion to impose probation conditions, whether expressly enumerated by statute or not." *In re J.R.*, 2019 IL App (1st) 190661, ¶ 25. However, the juvenile court's wide latitude in setting probation is not boundless. *Id*. A trial court's "wide latitude" in imposing probation conditions is limited by constitutional safeguards which must be exercised in a reasonable manner. *J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 10. "Thus, when deciding the propriety of a condition of probation imposed in a particular case, whether explicitly statutory or not, the overriding concern is reasonableness." *In re J.W.*, 204 Ill. 2d at 78. " 'To be reasonable, a condition of probation must not be overly broad when viewed in light of the desired goal or the means to that end.' " *In re J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 10, quoting *In re J.W.*, 204 Ill. 3d at 78. Said another way, "[w]here a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn; to the extent it is overbroad it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (Internal quotations omitted.) *In re J.W.*, 204 Ill. 2d at 78.

¶ 37    When assessing the reasonableness of a probation condition our Illinois Supreme Court has directed:

> "it is appropriate to consider whether the restriction is related to the nature of the offense or the rehabilitation of the probationer. [Citations.] Other considerations are: (1) whether the condition of probation reasonably relates to the rehabilitative purpose of the legislation, (2) whether the value to the public in imposing this condition of probation manifestly outweighs the impairment to the probationer's constitutional rights, and (3) whether there are any alternative means that are less

subversive to the probationer's constitutional rights, but still comport with the purposes of conferring the benefit of probation. [Citations.]" *Id*. at 80.

¶ 38    Several First District courts have recently reviewed similar or identical probation conditions stating no gangs and no gang contact or written orders and oral pronouncements containing similar conditions. See *In re K.M.*, 2018 IL App (1st) 172349 (holding the probation order allowing "no contact with gangs" was overly broad and unconstitutional constituting second-prong plain-error); see also *In re J'Lavon T.*, 2018 IL App (1st) 180228 and *In re Omar F.*, 2017 IL App (1st) 171073 (all with similar holdings), but see also *In re J.P.*, 2019 IL App (1st) 181087 (finding no error occurred at all under the first step of the plain-error doctrine as to similar probation conditions which were found not unreasonably overbroad where the trial court orally provided explanation concerning the restricted conduct); see also *In re J.R.*, 2019 IL App (1st) 190661 (with similar findings). Similar to *In re K.M.*, *In re J'Lavon T.*, and *In re Omar F.*, we do not invalidate gang restrictions in general, but find that certain conditions imposed in the case at bar – specifically "no gang contact" – is "too broad and general, and thus unreasonably burdens [respondent's] constitutionally protected liberty interests." See *In re K.M.*, 2018 IL App (1st) 172349, ¶ 23; *In re J'Lavon T.*, 2018 IL App (1st) 180228; and *In re Omar F.*, 2017 IL App (1st) 171073.

¶ 39    We begin our reasonableness analysis with respondent's concession that "the juvenile court undoubtably has an interest in preventing minor respondent's contact with gang members as a rehabilitative measure[.]" We agree that the trial court's gang-related restrictions generally are valid probationary conditions because they relate to respondent's rehabilitation. This is particularly true here where respondent, in his Social Investigation, denied that he or his two close friends were in gangs, but where the GIR noted that respondent was clearly associated with

at least two gangs and respondent had admitted to his gang involvement on social media.

Additionally, respondent had multiple photographs on social media picturing him with guns,

smiling while pointing the guns at the camera in addition to other concerning behavior.

¶ 40   We do not find issue with the trial court's probation conditions using the term "gangs"

generally.

¶ 41   With respect to the use of the word "gangs" respondent makes reference to our supreme

court's decision in *People v. Murray*, 2019 IL 123289, and argues that case illustrates the

difficulties in determining what qualifies as a gang and gang activities.  However, we disagree.

A probation order must clearly notify the probationer of prohibited and required conduct and

"the terms must be clear enough that a person of ordinary intelligence [has] a reasonable

opportunity to know what is prohibited, so that he may act accordingly *** without having to

guess at its meaning."  (Internal quotation marks omitted.)  *In re K.M.*, 2018 IL App (1st)

172349, ¶ 47.

¶ 42   As in *In re K.M.*, we do not think respondent would have to guess as to the meaning of

the word "gangs."  Nor would respondent have to guess as to what the court meant when it said

"no gang activity[.]"  See *id*. at ¶ 48.  Here, respondent's social media contains several comments

about his gang membership specifically noting his associations with the Black Disciple gang and

J Money gang.  Additionally, his profile introduction states that respondent is J Money gang.

There is no evidence in the record that respondent was confused by the term gang or what the

court meant by no gang activities.  Here the trial court's explanation is helpful where the court

specifically defined gang activity as being "any activity that furthers or promotes the function of

a street gang" and gave examples of what that would entail as it relates to social medial.  The

trial court asked if this was clear and respondent responded in the affirmative.  Moreover, as

pointed out in *In re R.H.*, "[i]f the trial court aims for specificity, it runs the risk of making the order too narrow to cover the behavior that should be prohibited for the juvenile to rehabilitate [himself], and invites an uncooperative and resistant juvenile to find ways to maneuver around the prohibitions" where a juvenile who wants to comply with the order would likely find it easier to follow a broad prohibition over one requiring a juvenile to engage in a legal interpretation of what the word gang means. *In re R.H.*, 2017 IL App (1st) 171332, ¶ 34.

¶ 43 However, we cannot agree that the value to the public in imposing a blanket no gang contact restriction outweighs the impairment to respondent's constitutional rights or that there are no alternative conditions that would be less subversive to respondent's constitutional rights while still comporting with the purpose of conferring the benefit of probation. See *In re J.W.*, 204 Ill. 2d at 80. The trial court's written orders here state "no gang contact[.]" The written order contains no qualification as to the "no gang contact" restriction.

¶ 44 This court in *In re K.M.* and *In re Omar F.* looked at similar unqualified written conditions and held "a blanket no-gang-contact condition prohibits the kinds of innocent, incidental contact with gang members that respondent, living in a gang-infested neighborhood, is likely (if not certain) to have during the course of his ordinary daily activities." *In re K.M.*, 2018 IL App (1st) 172349, ¶ 26. This court recognized the difficulty with such unqualified no-contact restrictions stating:

> "We will not indulge the fantasy that respondent, despite living in a neighborhood unfortunately blighted by gangs, drugs, and violent crime, may somehow manage to cut a path through life that simply avoids contact with any gang members. An order that requires him to do so is, for all practical purposes, impossible for him to obey. ***

The probation order, as written, leaves respondent perpetually walking on eggshells. At any moment, he could end up violating his probation, even unknowingly, just by doing what he is *supposed* to be doing—attending school, performing community service, staying home at night instead of taking to the streets. [Citation omitted.] That is why the unqualified no-gang-contact condition needed to be narrowed in *Omar F.*, and why it needs to be narrowed again here: to allow these minors to go about their lives; to engage in positive, productive activities; and to interact in innocuous ways with the people they will inevitably encounter while doing so. A probation order that leaves them perpetually afraid to live their lives is an unreasonable and unnecessary restriction of their liberty, and one that will tend to thwart, rather than promote, their rehabilitation." *Id*. at ¶¶ 28-29.

¶ 45    While making clear that it would not "intrude on the juvenile court's discretion to tailor gang-related conditions to individual cases" this court in *In re K.M.* provided some guidance stating "the remedy must involve some narrowing of this probation condition to reflect innocuous, incidental 'contact' ***." *Id*. at ¶ 39. We find basis for this prescription in our supreme court's decisions holding a probationary condition "overbroad and therefore unreasonable when *** there is no means by which the probationer may obtain exemption from the restriction for legitimate purposes." *In re Omar F*., 2017 IL App (1st) 171073, ¶ 59 (referencing our supreme court's decision in *In re J.W.*, 204 Ill. 2d 50, 80-81 (2003)); see also *Morger*, 2019 IL 123643, ¶ 58.

¶ 46    While the record does not provide detail about gang involvement in respondent's community, peer group, and school, respondent acknowledged gang involvement and proudly

displayed this fact all over his social media alongside what appeared to be other minors with whom respondent associates. Respondent is clearly troubled as evidenced by his criminal history, social investigation, GIR, and JRA. He is not doing well academically, he admits to illegally using drugs, and has posted on social media pictures of himself with guns and money. One does not have to reach far to understand that this young man is vulnerable to bad influences such as gangs and his membership in those organizations makes it more likely than not that, in his day-to-day life, respondent is exposed to and comes into contact with these bad influences. Accordingly, we find the rationale in *In re K.M.* applicable to the case at bar.

¶ 47    Furthermore, our colleagues in *In re J.P.* and *In re J.R.* also distinguish the trial court's probation conditions in those cases from the conditions in *In re Omar F.* or *In re J'Lavon T.* reasoning that in *In re J.P.* and *In re J.R.* "the trial court did not merely issue a 'blanket prohibition[]' " but instead "narrowed the probation condition, thereby allowing for 'innocuous' or incidental contact, such as familial and non-gang related communications with" family and school peers. *In re J.P.*, 2019 IL App (1st) 181087, ¶ 24; see also *In re J.R.*, 2019 IL App (1st) 190661, ¶ 28 ("Unlike cases where the court merely told the probationer to either stay away from or avoid street gangs and to either clear, remove, or not post gang-related content on social media (*In re J'Lavon T.*, [citation omitted]; *In re Omar F.*, [citation omitted]), here the court explained that J.R. could not participate in any activities that furthered or promoted a function of a street gang and must delete from social media any images or messages that promoted street gang activities, including the display of any street gang signs or insignias, and remove any tags from his social media account.").

¶ 48    In further explaining the rational for its ruling the court in *In re J.R.* reasoned that

"[a]lthough a restriction on a probationer's travel into a specified geographic area must provide a means by which the probationer may obtain exemption from the restriction for legitimate purposes [citing our supreme court's decision in *In re J.W.*], there is no similar requirement for exemptions in the context of ordering a probationer to refrain from having any direct or indirect contact with members of street gangs." *In re J.R.*, 2019 IL App (1st) 190661, ¶ 29.

¶ 49 However, the *In re J.R.* court also noted that "[t]he restrictions were not severe because they neither forbade all of J.R.'s use of social media nor prevented him from associating, communicating, and interacting with classmates and other groups of people in activities that did not promote or further a function of a street gang." *In re J.R.*, 2019 IL App (1st) 190661, ¶ 31. Just as we did here, we can infer the *In re J.R.* court assumed some of those "classmates and other groups of people" might be in gangs. See *id*. at ¶ 30. Although the preceding language leaves unclear whether the *In re J.R.* court found, in that case, that the probation restrictions did not contain an exemption from the restriction for legitimate purposes or that its holding is based on the quoted language above (*supra*, at ¶ 45), to the extent its opinion can be interpreted in that manner we disagree that the legitimate purpose exception has no applicability to gang related no contact probation conditions.

¶ 50 The probation statute relevant in *In re J.W.*, section 5/715(2)(r) of the Act (705 ILCS 405-715(2)(r) (West 2000)) allowed "a court to impose, as a condition of probation, certain restrictions on a minor's ability to be present within a designated geographical area *if the court includes terms whereby the probationer can enter the restricted area for legitimate purposes*." (Emphasis added.) *In re J.W.*, 204 Ill. 2d at 77. The court stated this language "mirrors the constitutional requirement that the condition of probation be narrowly drawn." *Id*. at 81. Our

supreme court noted that while the probation condition completely banishing J.W. from the Village of South Elgin without a legitimate purpose exception was not a condition expressly provided for by section 405-715(2)(r), it could nevertheless be a constitutionally valid condition of probation despite implicating fundamental constitutional rights if it was reasonable. *Id*. at 77-78. The court stated to be reasonable, a condition of probation requiring waiver of such rights "must be narrowly drawn; to the extent it is overbroad it is not reasonably related to the compelling state interest in reformation and rehabilitation and is an unconstitutional restriction on the exercise of fundamental constitutional rights." (Internal quotations omitted.) *Id*. at 78. The court concluded that the complete banishment of J.W. without a legitimate purpose exception was "not narrowly drawn, and, thus, an unconstitutionally overbroad restriction of J.W.'s fundamental rights. *Id*. at 80-82.

¶ 51    In *Morger*, 2019 IL 123643, decided by our supreme court after *In re J.R.*, the court concluded that "[l]ike the geographic ban in *J.W.*, the social media ban is absolute, admitting of no exceptions for legitimate use" and is therefore unconstitutional. *Id*. at ¶ 58. As the *Morger* court reiterated from its previous decision in *In re J.W.*, " '[w]here a condition of probation requires a waiver of precious constitutional rights, the condition must be narrowly drawn ***." *Id*. at ¶ 47. And as set forth in *In re J.W.*, while serving a valid purpose, a probation condition is too broad which imposes on a constitutionally protected right and does not allow for legitimate use. *In re J.W.*, 204 Ill. 2d at 80.

¶ 52    In finding the gang related probation conditions narrowly drawn, the court in *In re J.P.* and *In re J.R.* distinguished the facts from other First District cases finding the opposite – specifically, *In re Omar F.* and *In re J'Lavon T.* The *In re J.P.* court reasoned that contrary to those cases,

"the trial court explained the meaning of its oral pronouncement of 'no gangs, guns, or drug activities' *** [and] explained in detail the meaning of its prohibition, announcing that J.P. was restricted from participating in 'any activity that further[s] or promotes the function of a street gang,' and expressly explained the social medial restrictions. *** Accordingly, the trial court did not merely issue a 'blanket prohibition.' *** Instead, the trial court narrowed the probation condition, thereby allowing for 'innocuous' or incidental contact, such as familiar and non-gang related communication with J.P.'s brother and her school peers." *Interest of J.P.*, 2019 IL App (1st) 181087, ¶ 24. See also *In re J.R.*, 2019 IL App (1st) 190661, ¶ 28 (finding similar probation conditions were not vague where the trial court "explained that J.R. could not participate in any activities that furthered or promoted a function of a street gang and must delete from social media any images or messages that promoted street gang activities, including the display of any street gang signs or insignias, and remove any tags from his social media account.").

¶ 53    Notwithstanding the foregoing findings in *In re J.P.* and *In re J.R.*, we cannot agree that the explanations provided by the trial court here, or in *In re J.P.* and *In re J.R.*, alleviated the problem. The explanation by the trial court provided examples of conduct prohibited by the trial court's written order stating "no gangs" and "no gang contact[,]" but did not expressly allow exceptions for legitimate contacts. Here, even with the trial court's explanation, respondent is still left with a written order that expressly prohibits "gang contact" without any limitations. As in *In re K.M.*, the trial court's written "no-contact restriction did not differentiate between lawful and unlawful contact with gang members" and "[a]s a result appeared to prohibit even

'innocuous' or incidental contact that the minor would be hard pressed to avoid in a gang-infested neighborhood." *In re K.M.*, 2018 IL App (1st) 172349, ¶ 24. Additionally, the condition "failed to make exceptions allowing the minor to have contact with family members, classmates, coworkers, or others who might happen to be gang members, but whom the minor would unavoidably encounter in the course of his legitimate activities." *Id.* Accordingly, we find the "no gang contact" probation condition overly broad and unconstitutional constituting clear error under the first step of the plain-error analysis.

¶ 54                          Step Two - Plain-Error Analysis

¶ 55    Having found the "no gang contact" conditions unconstitutionally overbroad, we next consider whether respondent has met his burden of showing that these conditions amount to second-prong plain-error. In order to do so, "[r]espondent must show that the unconstitutional condition was *** serious enough to deny him a fair dispositional hearing." *Id.* at ¶ 40. We agree with the *In re K.M.* court's rationale finding second-prong plain-error reversal warranted in instances such as this.

¶ 56    In *In re K.M.* the court noted our supreme court's decisions holding certain sentencing errors reviewable under second-prong plain-error because it affected substantial rights as well as First District cases with similar holdings to include an unauthorized $5 electronic citation fine. *Id.* at ¶ 41. Noting our supreme court's explanation of similar considerations under both our second-prong plain-error rule and federal plain-error, the *In re K.M.* court pointed to various federal cases which have also reviewed for plain-error unpreserved claims of error in probation or supervised-release conditions citing these cases as persuasive authority. *Id.* at ¶¶ 42-43.

¶ 57    Concluding reversal was warranted with respect to the no gang contact provision in *In re K.M.*, the court aptly stated:

"The error in the no-gang-contact condition is both clear and serious enough to warrant reversal under the plain-error rule. As we have explained, this condition, left as it is, will leave respondent perpetually walking on eggshells, fearful that at any moment, he might violate his probation, even unknowingly, and even due to circumstances beyond his control. Taking the no-contact order in its ordinary English sense, respondent will be fearful of the daily, productive endeavors that are essential to his rehabilitation, including the activities - like travelling to and attending school – that the juvenile court required of him as further conditions of his probation.

This error is serious indeed. It pervasively intrudes on respondent's liberty interests and imposes needless, and surely unintended, obstacles to his rehabilitation." *Id*. at ¶¶ 43-44.

¶ 58    We agree and find *In re K.M.*'s rationale is applicable here. Accordingly, we vacate the "no gang contact" probation condition and remand to the trial court for a revised probation order. See *id*. at ¶ 45. On remand, the trial court may impose a "no gang contact" restriction with an exception for contacts that are innocent and not gang-related with others who may *coincidentally* be in a gang in accordance with the remainder of the court's orders.

¶ 59        B. Oral Probation Terms Related to Internet and Social Media

¶ 60    Respondent also challenges the trial court's oral explanation of specific conduct prohibited by its written orders relating to respondent's use of the internet and social media as follows:

"That would include posting anything on the internet [which furthers or promotes the function of a street gang], taking pictures with gang members with guns, smoking marijuana, if that's what it is that he's smoking.

He cannot post and must clear from any social media any photos or videos of himself holding or displaying any guns, real or replicas, or any other weapons. He must delete any photos, videos, or messages promoting street gang activity, acts of violence, criminal activity, illegal drugs, or money that was illegally obtained.

This includes the display of any street gang hand signs or insignias. He's not allowed to possess a gun or any illegal or non-prescribed drug. And he must remove any tags from his social media account today."

¶ 61    The trial court's terms related to the internet and social media were all made orally and were not set out in the trial court's written probation orders. See *Susberry*, 68 Ill. App. 3d at 561; *Clark*, 313 Ill. App. 3d at 960 (probation cannot be revoked where "a probation order fails to inform a defendant of the required and prohibited conduct."). The trial court's oral pronouncements relating to social media merely detailed "terms for implementing" the written probation requirements – "no gangs, guns, or drugs" and "no gang contact *or* activity" (emphasis in original). Therefore, under these circumstances, we do not find that the trial court's oral terms concerning respondent's internet and social media activity need to be set forth in a written order.

¶ 62    In any event, we find no error at all with respect to the trial court's oral terms concerning respondent's internet and social media use and therefore can find no reversable plain-error under either prong of the plain-error doctrine. See *Johnson*, 218 Ill. 2d at 139 (holding "there can be no plain error if there is no error").

¶ 63    Freedom of speech under the first amendment is among the constitutionally protected personal liberties and this right is implicated by restrictions on access to social media. *Morger*, 2019 IL 123643, ¶¶ 15, 18-20; see also *In re J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 6. It is well-settled that even such fundamental constitutionally protected rights however are not absolute and may be reasonably restricted in the public interest when narrowly drawn. *Morger*, 2019 IL 123643, ¶ 19. When applied to the reasonableness considerations espoused in *In re J.W.*, we do not believe there was anything unreasonable about the trial court's probation terms relating to his use of the internet and social media. See *In re J.W.*, 204 Ill. 2d at 80.

¶ 64    In general, a trial court can impose restrictions related to social media posting where it is related to the goals of fostering rehabilitation and protecting the public. See *In re K.M.*, 2018 IL App (1st) 172349, ¶¶ 53-54. Illinois courts have *parens patriae* power as codified in the Act which "explicitly 'charges the circuit court with the duty to act in the best interests of the minor and for the minor's own protection.' " *In re R.H.*, 2017 IL App (1st) 171332, ¶ 15. This power gives courts "more latitude in their approach toward disciplining juvenile offenders." *Id*. As the court noted in *In re K.M.*, "[b]ecause social medial is now a ubiquitous method of communication and interaction among adolescents like respondent, restrictions on its use are indispensable to the goal of rehabilitation." *Id*. at ¶ 54. Moreover, as this court noted in *In re R.H.*, posts which foment and glorify criminal behavior such as displaying gang signs, brandishing guns, and smoking illicit substances

> "communicate to members of [respondent's] gang and other gangs an endorsement of and a willingness to engage in criminal activities. *** The implications *** do not simply affect [respondent's] chances of future employment, they put [him], his family, and anyone else in his vicinity, in danger

- 24 -

> of bodily harm.  We are mindful that [such] social media postings \*\*\* do not exist in a vacuum but sometimes, sadly spill out into real-world violence." *In re R.H.*, 2017 IL App (1st) 171332, ¶ 19.

Notwithstanding, such probation restrictions must be exercised in a reasonable manner.  *In re J.W.*, 204 Ill. 2d at 80; *In re J'Lavon T.*, 2018 IL App (1st) 180228, ¶ 10.

¶ 65    Here we find reasonable the trial court's probation terms restricting respondent's internet and social media postings relating to gangs, guns, and drugs.  Respondent was adjudicated delinquent for AUUW and resisting arrest.  Respondent's delinquency stems from an altercation with police officers that occurred while the minor was out well past curfew.  During the incident respondent physically engaged an officer, pulled out a gun, and fled the scene despite the officer's repeated commands to stop and drop the gun.  At sentencing, there was clear evidence, posted on social media by respondent himself, depicting his involvement in at least two gangs.  There were also photographs of respondent engaging in illicit and self-destructive activities to include numerous pictures of him pointing a gun aggressively at the camera, flashing money, and smoking an unknown substance.  Given this concerning content, we find the trial court's internet and social media terms were both appropriate and warranted.

¶ 66    We also find the value to the public in imposing these terms manifestly outweigh the impairment to respondent's constitutional rights. See *In re J.W.*, 204 Ill. 2d at 80.  We also do not believe the trial court could have imposed less subversive terms while comporting with the purpose of conferring the benefit of probation.  See *id.*  Unlike in *Morger*, the trial court's internet and social media terms were not a blanket restriction on respondent's use of the internet and social media.

¶ 67    The trial court's internet and social media posting terms were very limited in that they related only to content concerning guns, drugs, and postings or tags that would further or promote the function of a street gang.  The trial court provided examples of prohibited postings such as pictures with gang members, guns or illegal or unprescribed drugs, displays of street gang hand signs, depictions of acts of violence and criminal activities, and tags associating him with such conduct.  As this court has previously found, "a juvenile probationer's continued public association with gangs or illegal activity, online or otherwise, poses a clear threat to his rehabilitation and any positive, productive ambitions he may have in life" and the trial court's order requiring respondent to keep his social media free of such compromising content is in his best interests.  *In re K.M.*, 2018 IL App (1st) 172349, ¶ 61; see also *In re Jawan S.*, 2018 IL App (1st) 172955, ¶ 62.

¶ 68    While we agree, as respondent argues, that such terms may impede his ability to post specific anti-violence messages containing firearm replicas, we are not persuaded that this outweighs prevention of the problematic content such as the menacing gun photographs which have appeared on respondent's social media in the past.  We are in favor of respondent posting anti-violence messages; however, we believe this can still be readily and effectively accomplished in a manner that comports with the parameters of the trial court's internet and social media terms.

¶ 69    Respondent argues these terms could prevent him from posting otherwise innocuous content such as a photograph of him in a school play where he is wielding a weapon.  However, given the potential detriment to respondent and others around him stemming from the prohibited posts and tags, we are comfortable that respondent may only be able to post those photographs of

his participation in a school play, should he decide to engage in this activity, which do not show him wielding a weapon prohibited by the internet and social media terms.

¶ 70    As to offending actions of others such as tags or comments that are placed on respondent's social media which respondent argues could also be problematic for him despite his not causing the offending content, we point out that respondent has significant control over his social media.  He can, for example, disable the feature that allows him to be tagged by others as required in *In re K.M.*  *In re K.M.*, 2018 IL App (1st) 172349, ¶ 58.  Again, given the evils the trial court's social media and internet terms seek to avoid and the accompanying benefits to respondent and those around him stemming from foreclosing respondent's own destructive behaviors, we think it reasonable for the trial judge to impose restrictions requiring respondent to be cautious about his own postings on the internet and social media and vigilant in monitoring and preventing postings by others which are linked to him.

¶ 71                                CONCLUSION

¶ 72    For the foregoing reasons, the judgment of delinquency of the circuit court of Cook County is affirmed in part and vacated in part.  We vacate the finding of delinquency on respondent's UPF charge and affirm the finding of delinquency as to the AUUW charge.  We also vacate that portion of the trial court's order requiring "no gang contact" and remand the cause so that the trial court may consider whether such restrictions are still warranted, and if so, provide exceptions for legitimate purposes.

¶ 73    Affirmed in part, vacated in part, and remanded with instructions.